UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL BUTTS, as Special Administrator for the Estate of Beverly Butts, | ) ) ) ) | CIV.  10-4063-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, individually and d/b/a Good Samaritan Society Albert Lea, | ) ) ) ) ) | |
| Defendant. | ) | |

Defendant, The Evangelical Lutheran Good Samaritan Society, moves for summary judgment alleging that because Minnesota law applies to this claim, plaintiff's personal injury claims abate under the Minnesota survival statute. Docket 36. Alternatively, Good Samaritan alleges that plaintiff cannot satisfy the elements of his claims, Minnesota statute § 626.557 provides no right of action, and res judicata bars subsequent litigation in this case. *Id.*; Docket 83. If this action continues, Good Samaritan moves to seal a number of confidential business documents. Docket 34. Plaintiff, Michael Butts, as Special Administrator for the Estate of Beverly Butts, resists all motions. Docket 41; Docket 56; Docket 84. For the foregoing reasons, Good Samaritan's

motion for summary judgment is granted, and the motion to seal is denied as moot.

## BACKGROUND

The facts viewed in the light most favorable to Butts, the nonmoving party, are: Between January and May of 2008, four teenage nursing assistants who worked at the Good Samaritan Society of Albert Lea, Minnesota, engaged in systematic abuse of a number of elderly adult residents of Good Samaritan's facility. Docket 37 at 3. One of the victims of this abuse was Beverly Butts. Butts's power of attorney brought a personal injury action on her behalf in Minnesota state court on January 20, 2010. Docket 83 at 2. Also joined in that action were three other victims: Kenneth Hojberg, Clare Knutson, and Sylvia Wulff. Docket 81 at 1. Three of the four plaintiffs died during the course of litigation. The claim of the fourth plaintiff was arbitrated. *Id.* at 1-2. The causes of death are unrelated to the abuse.

After the decedents' deaths, Good Samaritan moved for summary judgment as to each of the deceased plaintiffs because it alleged that the causes of action abated upon death under Minnesota law. Docket 71 at 2. The Minnesota court allowed the estates to voluntarily dismiss their claims without prejudice in Minnesota so the claims could be brought in South Dakota. The court reasoned that plaintiffs "had sought the voluntary dismissals early in the litigation and that [Good Samaritan] would not be prejudiced merely by having

to defend the same claims in South Dakota federal court." *Butts ex rel. Iverson v. Evangelical Lutheran Good Samaritan Soc'y*, 802 N.W.2d 839, 840 (Minn. Ct. App. 2011). Michael Butts then filed this complaint on behalf of Beverly's estate in June of 2010. Docket 1. Since that time, the Minnesota Court of Appeals reversed the trial court's dismissal of the Minnesota *Butts* decision and held that Good Samaritan was entitled to summary judgment and dismissal with prejudice. *Butts*, 802 N.W.2d at 843. The Minnesota Supreme Court denied further review in October of 2011. Docket 83-4.

Meanwhile, four different actions involving the victims of the nursing abuse were pending in front of this court. In June of 2010, Good Samaritan moved to dismiss one of those cases, claiming that Minnesota, rather than South Dakota, law applied to the action. Minnesota law provided that a personal injury cause of action abates with the death of the claimant. This court denied Good Samaritan's motion on December 28, 2010, and applied South Dakota's then-existing choice-of-law rule to conclude that South Dakota had "the most significant relationship" to the claim. *Jacobs ex rel. Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, No. 10-4035, 2010 WL 5439767, *1 (D.S.D. Dec. 28, 2010). On February 2, 2012, this court granted summary judgment in favor of Good Samaritan finding that South Dakota choice-of-law rules directed the court to apply Minnesota substantive law to plaintiffs' survival actions, and all claims abated upon the residents' deaths. *Jacobs ex*

*rel. Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, No. 10-4035, 2012 WL 346670, *4-6 (D.S.D. Feb. 2, 2012). Good Samaritan now moves for summary judgment on Butts's claim. Docket 36.

### STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

If there is a dispute in facts that could affect the outcome of the case, summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). What is a material fact is determined by the applicable substantive law in the case. *Id.* If there is a genuine dispute in facts such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is inappropriate. *Id.* Under this analysis, the nonmoving party receives "the most

4

favorable reading of the record as well as the benefit of [all] reasonable inferences that arise from the record." *Eng v. Cummings, McClorey, Davis & Acho, PLC*, 611 F.3d 428, 432 (8th Cir. 2010) (citation omitted). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (citation omitted).

## DISCUSSION

### I.    Res Judicata

Good Samaritan argues that res judicata bars plaintiff's claims because both causes of action involve the same parties or their privies and the same operative facts, there was a final judgment on the merits, and plaintiff had a full and fair opportunity to litigate his claim in Minnesota. For these reasons, Good Samaritan concludes that the Minnesota and South Dakota claims are the same cause of action and cannot be relitigated. Plaintiff claims that res judicata is not applicable because the parties and types of action are distinct in each case. In the alternative, plaintiff argues that the court should apply the exception to res judicata because its application would contravene public policy considerations.

The Eighth Circuit Court of Appeals has concluded that res judicata is a substantive issue in a diversity case and is controlled by state law. *Hillary v. Trans World Airlines, Inc.*, 123 F.3d 1041, 1043 (8th Cir. 1997) (citations

omitted). "In determining which state's res judicata law applies, 'it is fundamental that the res judicata effect of the first forum's judgment is governed by the first forum's law, not by the law of the second forum.'" *Id.* (citations omitted). Because the first *Butts* cause of action was decided in Minnesota, Minnesota law will apply to the res judicata analysis. Minnesota law provides:

> A judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every matter which was actually litigated, but also as to every matter which might have been litigated therein.

*Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004) (citation omitted). Res judicata bars a subsequent claim when: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter." *Id.* (citations omitted).

### A.    The Same Factual Circumstances

The first determination is whether the two claims arise from the same set of factual circumstances. Plaintiff alleges that the Minnesota cause of action is materially different because the Minnesota claims were for civil assault and battery, intentional infliction of emotional distress, and failure to report the maltreatment of vulnerable adults. Docket 72 at 2. Conversely, the South

6

Dakota action is for negligent management, negligent supervision, negligent retention, and strict liability. *Id.* Good Samaritan claims that the facts identified in both the Minnesota and South Dakota complaints are the same and derive from the same conduct, and plaintiff has but one cause of action. Docket 87 at 2.

Res judicata applies not just to claims that were actually litigated but to all claims that stem from the same set of factual circumstances that could have been litigated in an earlier action. *Hauschildt*, 686 N.W.2d at 840. And "a plaintiff may not split his cause of action and bring successive suits involving the same set of factual circumstances." *Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn. 1978). One test to determine whether the first action bars the second action is to ask whether the same evidence is used to sustain both actions. *Hauschildt*, 686 N.W.2d at 840-41 (citation omitted).

The Minnesota *Butts* case stems from the same set of operative facts and circumstances as the South Dakota cause of action because both are based on the nearly identical facts alleged in both complaints. Docket 83-2 at 3-4; Docket 1. The Minnesota and South Dakota actions arise out of the alleged tortious conduct of Good Samaritan employees that occurred from January to May of 2008 and Good Samaritan's failure to protect its residents. The South Dakota claims of negligence against Good Samaritan could have been brought in the Minnesota action. The test is not how the cases are postured, labeled, or

7

brought against the parties, but whether the claims arise from the same set of facts and are proven with the same evidence.

Plaintiff argues that as in *Hauschildt*, the Minnesota and South Dakota claims do not have the same factual circumstances because they require different evidence. Docket 81 at 7-8. *Hauschildt*, however, is factually distinguishable because the rights of the *Hauschildt* plaintiffs to assert the second claim did not arise at the same time as the right to raise their first claim. *Hauschildt*, 686 N.W.2d at 841. That court had to consider new evidence for the second claim, which precluded the application of res judicata. *Id.* For *Butts*, the right to assert the first and second causes of action arose at the same time and all relevant evidence for any type of claim was available and should have been raised in Minnesota. *See id.* Plaintiff cannot split his cause of action. *Mealey*, 263 N.W.2d at 807. *See also Butts*, 802 N.W.2d at 843 ("One cause of action exists in this case, for which a court must determine the applicable law."). Because the Minnesota and South Dakota claims involve the same set of factual circumstances that are supported by the same evidence, the first prong of the res judicata test is met.

### B.   The Same Parties or Privies

The Minnesota claim also involved the same parties or privies as the South Dakota claim. Under Minnesota law, those in privity "are so connected with the parties in estate or in blood or in law as to be identified with them in

interest, and consequently to be affected with them by the litigation." *Porta-Mix Concrete, Inc. v. First Ins. East Grand Forks*, 512 N.W.2d 119, 122 (Minn. Ct. App. 1994) (citation omitted). Privity may also exist if a person identifies an interest with another person that represents the same legal right. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (citations omitted). One party is in privity with another if that person has a "controlling participation" or an "active self-interest" in the proceeding, is a successor in interest, or has interests that are represented by a party to the action. *Id.* at 119.

There is no dispute that Good Samaritan is the defendant in both Minnesota and South Dakota. The plaintiff in this action, Michael Butts, is the special administrator or representative of the estate of Beverly Butts. Because Michael Butts is the plaintiff, he has a "controlling participation" in the action and also represents the successor in interest. Therefore, Michael Butts is in privity with Beverly Butts, the original wronged party. The plaintiff in the Minnesota cause of action was Kathy Iverson, who was Beverly Butts's power of attorney and brought the claim on her behalf. Iverson also had a "controlling participation" in the Minnesota action and directly represented Beverly Butts's interests. Michael Butts and Kathy Iverson are in privity with Beverly Butts and each other. Because both claims involve the same parties or their privies, this prong supports the application of res judicata to bar plaintiff's claim.

9

### C.    Final Judgment on the Merits

The third prong requires the court to decide if there was a final judgment on the merits in the first case. For res judicata, a judgment is final when "the appellate process is exhausted." *Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 715 N.W.2d 484, 488 (Minn. Ct. App. 2006) (citation omitted). The Minnesota Supreme Court has stated that "[s]ummary judgment is a determination on the merits." *Burma v. Stransky*, 357 N.W.2d 82, 89 (Minn. 1984) (citation omitted). Specifically, dismissal of a claim that is based on a statutory defense constitutes a decision on the merits and bars any subsequent relitigation of the same cause of action. *See Nitz v. Nitz*, 456 N.W.2d 450, 452 (Minn. Ct. App. 1990) ("A dismissal based on statute of limitations grounds is a decision on the merits, and is a bar to a second action brought under a different limitation period where the claims are substantially the same.").

The Minnesota Court of Appeals determined that the lower court erred because "the district court deprived [Good Samaritan] of an existing defense" when it allowed Butts to voluntarily dismiss the claim even though Minn. Stat. § 573.01 provided that plaintiffs had no viable claims following the decedents' deaths. *Butts*, 802 N.W.2d at 843. The court held that summary judgment and dismissal with prejudice was appropriate because there was no dispute that the residents' deaths were unrelated to their claims of personal injuries. *Id.* After the Minnesota Supreme Court denied further review, that determination

10

became final and a judgment was entered for Good Samaritan.[1] This is a final determination on the merits such that prong three of the res judicata analysis is satisfied.

### D.      Full and Fair Opportunity to Litigate

The final element that must be satisfied is whether the parties had a full and fair opportunity to litigate the matter on the merits. "[W]hether a party had a full and fair opportunity to litigate a matter generally focuses on 'whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties.' " *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001) (citation omitted). The Minnesota litigation progressed to the point of summary judgment. Plaintiff had the opportunity to argue the issue of survivability, but he chose to admit that the claims would abate under Minnesota law. *Butts*, 802 N.W.2d at 843. Plaintiff did not note any lack of due process or unfulfilled procedural hurdles that indicate he did not have a full and fair opportunity to litigate the claims in Minnesota. For these reasons, plaintiff had a full and fair opportunity to litigate

---

[1]  Judgment should be entered for the successful party upon the Minnesota Supreme Court's denial of a petition for review. *See* Minn. R. Civ. App. P. 136.02; *Hoyt Inv. Co. v. Bloomington Comm. & Trade Ctr. Assocs.*, 418 N.W.2d 173, 176 (Minn. 1988).

the issue of whether the decedent's claims survived her death in the Minnesota action and any subsequent attempt to litigate it again is barred by res judicata.

Plaintiff argues that res judicata is a flexible and equitable doctrine, and the court should not apply it because its application would contravene public policy considerations. Docket 84 at 1-2. Minnesota has adopted a narrow exception to the stringent use of res judicata when its application goes against public policy. *See AFSCME Council 96 v. Arrowhead Reg'l Corr. Bd.*, 356 N.W.2d 295, 299 (Minn. 1984) ("Neither collateral estoppel nor res judicata is rigidly applied. Both rules are qualified or rejected when their application would contravene an overriding public policy[.]"). Plaintiff claims that the public policy at issue is South Dakota's interest in ensuring that corporations doing business in the state do not operate in a harmful manner. Docket 84 at 2. As is discussed later, Minnesota's interests, contacts, and policies apply in this case, and plaintiff's public policy argument does not have merit. This is the type of case where res judicata should and does apply; therefore, the exception to the application of res judicata is not warranted in this case.

## II.    **Choice-of-Law Rules**

Alternatively, if this claim is not barred by res judicata, the court would examine whether Minnesota or South Dakota law applies to the cause of action

based in tort law. Both parties agree that the states' laws conflict[2] because the personal injury claims would abate under Minnesota's survival statute if Minnesota law applies, and the claims would proceed if South Dakota law applies. Good Samaritan argues that South Dakota's newly adopted choice-of-law rule, which directs courts to apply the law of the state where the injury occurred, is a procedural law that applies retroactively to actions pending prior to its enactment. For that reason, Minnesota's substantive law applies and the action abates. Plaintiff alleges that South Dakota's new choice-of-law rule is substantive and not retroactive, and the court must analyze which state has "the most significant relationship" to the claim.

### A.    Application of SDCL 21-3-14

The first step the court must take is to determine what choice-of-law rules apply. *See Klipsch, Inc. v. WWR Tech., Inc.*, 127 F.3d 729, 733 (8th Cir. 1997). "It is, of course, well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure, but the substantive law of the relevant state." *Hiatt v. Mazda Motor Corp.*, 75 F.3d 1252, 1255 (8th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). In a choice-of-law analysis for a diversity action brought in

---

[2] *Compare* Minn. Stat. § 573.01 (stating "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists") *with* SDCL 15-4-1 ("All causes of action shall survive and be brought, notwithstanding the death of the person entitled . . . to the same[.]").

13

federal district court, the choice-of-law rules are substantive for *Erie* purposes, and the choice-of-law rules of the forum state are applied to determine the litigating parties' rights. *Allianz Ins. Co. v. Sanftleben*, 454 F.3d 853, 855 (8th Cir. 2006). Because this action was filed in South Dakota, the court will apply the South Dakota choice-of-law rules.

At the time this action was filed, South Dakota used "the most significant relationship" test from the Restatement (Second) of Conflict of Laws to determine which state's law applies in a multi-state tort action. *Chambers v. Dakotah Charter, Inc.*, 488 N.W.2d 63, 67 (S.D. 1992). During the 2011 legislative session, House Bill 1145 was passed and signed into law. It altered the state's choice-of-law rule as it applies to the survival of personal injury claims following death. The language of the new law adds a new section to SDCL ch. 21-3, which provides:

> In any action arising out of an injury to the person, the local law of the state where the injury occurs determines whether a claim for damages survives the death of the party sought to be held liable or of the injured person. For purposes of this section, the place where the injury occurs is the place where the forces causing the injury first result in actionable injury to the injured person.

SDCL 21-3-14. The statute became effective on July 1, 2011, while this action was pending. Docket 37 at 31. As a result, the inquiry is whether the newly enacted statute applies retroactively to this action.

Both parties agree that the South Dakota Supreme Court case, *Dahl v. Sittner*, 474 N.W.2d 897 (S.D. 1991), controls in a retroactivity analysis. *Dahl* recognizes that newly enacted or amended statutes are not given retroactive effect unless the South Dakota Legislature expressly indicates otherwise.[3] *Id.* at 901. South Dakota substantive statutes are not applied retroactively. *See id.* But "[w]here a new statute deals only with procedure, it applies to all actions, including those which have already accrued or are pending, as well as those which arise after enactment of the statute." *Id.*

Although both the *Erie* test and the retroactivity analysis label and discuss the substance-procedure dichotomy, they are not the same and each should be a distinct analysis.[4] The Supreme Court has been clear that it

---

[3] Plaintiff argues that there is proof that the legislature did not intend for this statute to be applied retroactively because the statute originally included language, deleted before enactment, that would have applied it to all pending cases. Deletion of a provision within a statute prior to its going into effect is not proof of the legislature's intent, and the court should not examine legislative history when the text of a statute is not ambiguous. *See Fin-Ag, Inc. v. Watertown Livestock Auction, Inc.*, 754 N.W.2d 23, 28 (S.D. 2008) ("[W]e consistently only use the plain language of the statute and never examine the policy or legislative history unless the text is ambiguous."). Because the text of SDCL 21-3-14 is unambiguous, the court will not consider the legislative history. Plaintiff also notes the individual statements of one legislator to support the conclusion that the statute was not intended to apply retroactively, but this support is equally unavailing. *See Benson v. State*, 710 N.W.2d 131, 159 n.15 (S.D. 2006) ("We have consistently held that statements of individual legislators are not persuasive to establish the intent of the Legislature for a particular statute.") (citations omitted).

[4] *See Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988) (stating that the words substance and procedure mean little except to describe a dichotomy,

15

"rejects the notion that there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 726 (1988) (citation omitted). For an *Erie* analysis, the substance-procedure determination is made by applying the outcome determinative test with its purpose being to provide "substantial uniformity of predictable outcome between cases tried in a federal court and cases tried in the courts of the State in which the federal court sits." *Id.* at 727 (citations omitted). The outcome determinative test acknowledges the goals identified in *Erie*: avoiding the inequitable administration of laws and discouraging forum shopping. *In re Baycol Prods. Litig.*, 616 F.3d 778, 787 (8th Cir. 2010) (citing *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). For a choice or conflict-of-law determination, the substantive procedural distinction is to "delimit spheres of state legislative competence." *Wortman*, 486 U.S. at 727. Finally, courts engage in the substance-procedure distinction to determine if a statute should be applied retroactively to a pending case because it "primarily concerns legislative intent and only secondarily considers fairness with regard

---

and what the two words mean in each context is determined by the purpose or reason that the dichotomy is drawn); *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796 (8th Cir. 2005) (noting the two distinct analyses for *Erie* and conflict-of-law inquiries even though both require a substance and procedure determination). *See also Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999) (stating that even if attorney's fees are substantive for *Erie* purposes "they are not thereby necessarily substantive under Oklahoma choice-of-law rules.").

16

to party expectations." *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999).

For *Erie* purposes and to prevent different outcomes based on whether the case is filed in state or federal court, this court must determine what the South Dakota Supreme Court would conclude as to whether SDCL 21-3-14 should be applied retroactively. The South Dakota Supreme Court stated that those "statutes which affect only procedural matters, as opposed to substantive rights, are given retroactive effect." *Dahl*, 474 N.W.2d at 901. Statutes that are solely remedial or those that affect remedies should be given retroactive effect. *Tischler v. United Parcel Serv.*, 552 N.W.2d 597, 608 (S.D. 1996). Remedial statutes are those "that describe methods for enforcing, processing, administering, or determining rights, liabilities or status." *Id.* (quoting 2 Sutherland, Statutes and Statutory Construction § 41.09 at 399 (5th ed. 1992)). The South Dakota Supreme Court has also recognized that procedural law is made up of "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Vold v. Broin & Assocs., Inc.*, 699 N.W.2d 482, 489 (S.D. 2005) (citing Black's Law Dictionary 1221 (7th ed. 1999)).

Substantive law, conversely, "creates, defines, and regulates the rights, duties, and powers of the parties." *Id.* (citing Black's Law Dictionary 1443 (7th ed. 1999)). And "[s]tatutes affecting substantive rights . . . are not to be given

17

retroactive effect." *Tischler*, 552 N.W.2d at 608 (citing *West v. John Morrell & Co.*, 460 N.W.2d 745, 747 (S.D. 1990)). A statute is substantive and not applied retroactively if it "*created the obligation in the first place, where there had been none before.*" *Id.* at 609 (citing *West*, 460 N.W.2d at 748) (Sabers, J., concurring) (emphasis added)). "The test is whether the change in the statute constitutes a change in substantive law (as opposed to procedural law) and not whether a change in the statute affects the substantive rights of the parties." *Id.* at 608 (citing *Schultz v. Jibben*, 513 N.W.2d 923, 925 n.3 (S.D. 1994)).

The South Dakota Supreme Court has analyzed the distinction between substantive and procedural statutes numerous times for retroactivity purposes. In *Lyons v. Lederle Laboratories*, 440 N.W.2d 769, 770 (S.D. 1989), the court determined that the legislature's change to the medical malpractice statute of limitations was procedural because it only affected the remedy. Later, in *West,*, 460 N.W.2d at 747, the court held that the legislature's change to the statute of limitations in worker's compensation cases was a substantive change for retroactivity purposes because it changed the triggering date, placed an affirmative obligation on employers to deny coverage before the statute of limitations had run, and had a substantive effect on an employer's rights.

In *Dahl*, the court determined that an amendment to the state's punitive damages statute, which regulated discovery and established a reasonable basis for the claim before submission to the jury, was procedural and could be

18

applied retroactively because it left the substantive nature of the statute unchanged. *Dahl*, 474 N.W.2d at 902. The court concluded that the amended statute "only affects the procedures involved in obtaining discovery regarding punitive damages and submitting the claim to the finder of fact." *Id.* In *Tischler*, the court analyzed a new worker's compensation statute and determined that the statute "created a new right for the employee to collect the automatic penalty and a new duty on the employer and insurer to pay." *Tischler*, 552 N.W.2d at 608. Thus, the statute was substantive because it created both a penalty and an obligation that had not existed before. *Id.* at 608-09. Finally, the South Dakota Supreme Court determined that an amendment to a statute that removed the power to suspend liquor licenses could not be applied retroactively because the "authority to revoke liquor licenses was not merely a procedural function, but was the power to affect the substance of the license itself." *In re Engels*, 687 N.W.2d 30, 34 (S.D. 2004).

In the present case, the enactment of SDCL 21-3-14 altered the state's choice-of-law rule for survival of personal injury claims only when one of the parties dies. It did not abolish or create new substantive law. South Dakota's substantive law on survival actions remains unchanged by the new statute. SDCL 21-3-14 now directs this court, in a multi-state tort action, to apply the law of the state where the injury occurred (which here is Minnesota) and functions as the mechanism to determine, enforce, process, or administer

19

litigants' liabilities, status, or rights that already exist. *See Tischler*, 552 N.W.2d at 608. The statute does not impose affirmative obligations on any parties or create new rights or duties. *See id.* at 608-09. *See also West*, 460 N.W.2d at 747. The process of applying the law of the state of the injury versus "the most significant relationship" test may change the result of the analysis, but the statute does not alter a substantive right or remedy. For this reason, the statute is purely procedural for retroactivity purposes and applies retroactively to this claim. After applying South Dakota's choice-of-law rules, as amended, the court finds that pursuant to SDCL 21-3-14, this court must apply the law of the state where the injury occurred, which is Minnesota.

### B.      Minnesota Has the Most Significant Relationship

In the alternative, even if SDCL 21-3-14 was substantive for retroactivity purposes, the court would still apply Minnesota law because it is the state with "the most significant relationship." When the court made its initial determination to deny Good Samaritan's motion to dismiss in the *Jacobs* case, the court had to consider all facts alleged in the complaint to be true. *Jacobs*, 2010 WL 5439767, at *1. Now on summary judgment, the court does not have to accept all of plaintiff's facts as true, but rather, views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in his favor. With the summary judgment lens and in light of the facts uncovered

during discovery, both the contacts[5] and the policies[6] of "the most significant relationship" test of the Restatement (Second) of Conflict of Laws support application of Minnesota law.

The four contacts described in § 145 almost entirely relate to Minnesota. The injuries and all allegedly tortious conduct occurred in Minnesota. All actors or victims who were involved in these relationships and disputes are Minnesota residents. Relevant policies were put in place at Good Samaritan-Albert Lea by Minnesota employees. Any employee supervision and all hiring, firing, and retention decisions were made in Minnesota. The relationship between the decedent, the representative, and Good Samaritan is centered in Minnesota. The only contact that supports application of South Dakota law is that Good Samaritan is a North Dakota corporation with its principal place of

---

[5] Under this test, the court views the following contacts: (1) "the place where the injury occurred"; (2) "the place where the conduct causing the injury occurred"; (3) the domicil, residence, nationality, place of incorporation and place of business of the parties"; and, (4) "the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145.

[6] Other principles the court must weigh are (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and, (7) "ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6.

business in South Dakota. These contacts overwhelmingly support application of Minnesota law.

After determining the relative importance of the "contacts" found within § 145 and that they weigh in favor of applying Minnesota rather than South Dakota law, the court also considered the seven § 6 Restatement principles in light of the contacts already established. The court finds that factors two and three, which consider the policies of the forum state and other interested states, are the most useful to resolve this conflict dealing with a survival action. South Dakota has an interest in ensuring that a business which operates within the state does so without harm to others. South Dakota also has an interest that its law not be used as the means to maneuver around another state's unfavorable law. Minnesota's public policy indicates that survival actions are barred. Minn. Stat. § 573.01. As the state with the clearest connection to the dispute, this principle weighs heavily in favor of applying Minnesota's law. These basic principles, contacts, and the other policy determinations listed in the Restatement show that Minnesota has the most significant relationship to the action. As a result, Minnesota law applies to this action.

### III.    Applying Minnesota Law to Survival Actions

"Under Minnesota law, a claim for personal injuries dies with the plaintiff, subject only to specifically defined exceptions." *Deal v. Northwood*

*Children's Home Soc'y, Inc.*, 608 N.W.2d 922, 924 (Minn. Ct. App. 2000). Minn. Stat. § 573.01 provides, "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists[.]" The survival statute does not define "injury to the person." *Lipka v. Minn. Sch. Emps. Ass'n, Local 1980*, 537 N.W.2d 624, 629 (Minn. Ct. App. 1995).

To determine whether a claim can survive a party's death, the Minnesota Supreme Court has said that the survivability test is in "the substance, not the form, of the cause of action." *Nelson v. Holland*, 776 N.W.2d 446, 449 (Minn. Ct. App. 2009) (citation omitted). The court examines whether a personal injury is the "primary and moving cause of the damages sought," and "the nature of the damages sued for rather than the form of the remedy." *Lipka*, 537 N.W.2d at 629 (citations omitted).

The damages that plaintiff seeks here are "[f]or the physical pain and mental and emotional suffering" of the decedent and for her medical expenses. Docket 1 at 8. The requested damages are compensatory and punitive, which relate back to the alleged tortious conduct of Good Samaritan and its employees. These damages stem from the personal injuries to the resident herself. None of the damages sought are unique harms to the estate of the deceased resident; therefore, the claims based on the decedent's injuries extinguished upon her death. *See* Minn. Stat. § 573.01; *Johnson v. Consol. Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988) (stating that section

573.01's phrase "injury to the person" relates only to two people, "the injured person and the one who perpetrated the injury.").

Under the public policy of Minnesota as expressed in Minn. Stat. § 573.01, plaintiff's claims of negligent retention, negligent supervision, negligent management, negligence as a matter of law,[7] and punitive damages must abate because the substance of each is based in tort law and cannot survive the death of Beverly Butts. Good Samaritan has met its burden of showing that there is no genuine issue of material fact and that as a matter of law, plaintiff's pleaded claims abate under Minnesota law. *See Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."); *see also Jones*

---

[7] While a negligence per se claim is based in statute and is not a typical negligence or personal injury claim, it still abates under Minn. Stat. § 573.01 because it is based on the personal injuries of the resident. *See Estate of Benson by Benson v. Minn. Bd. of Med. Practice*, 526 N.W.2d 634, 637 (Minn. Ct. App. 1995) ("That the cause of action is a creature of statute does not change its nature or remove it from the survival statute.") (citation omitted). The Minnesota Court of Appeals has found that statutory causes of action, like claims under the Minnesota Human Rights Act and an invasion of statutorily protected privacy rights under the Minnesota Government Data Practices Act, abate with the death of the claimant. *Id.*; *Lipka*, 537 N.W.2d at 630. Accordingly, plaintiff's claim under the Minnesota Vulnerable Adult Act is a personal injury claim that stems from tort law and abates upon death.

*ex rel. Jones v. Winnebago Indus., Inc.*, 460 F. Supp. 2d 953 (N.D. Iowa 2006) ("[S]ummary judgment may be 'particularly appropriate' here, because . . . the issue of the appropriate choice of law is a question of law for the court.").

Plaintiff has not set out any material facts that sufficiently show that his claims may continue. Even viewing the facts in the light most favorable to plaintiff and drawing all reasonable conclusions in his favor, the court finds that summary judgment is appropriate.

## CONCLUSION

The doctrine of res judicata bars plaintiff from relitigating claims that were dismissed with prejudice in Minnesota state court. Alternatively, South Dakota's amended choice-of-law rule is a procedural statute for retroactivity purposes. Because the statute is procedural and does not affect substantive rights or law, it applies retroactively to this cause of action and directs the court to apply Minnesota substantive law on the survivability issue. Even if the statute did not apply, under the "the most significant relationship test" the court would reach the same result. When applying Minnesota substantive law, plaintiff's personal injury claims against Good Samaritan abated upon decedent's death. Because plaintiff only pleaded actions sounding in tort, all claims abate and summary judgment in favor of Good Samaritan is appropriate. Therefore, it is

ORDERED that Good Samaritan's motion for summary judgment (Docket 36) is granted.

IT IS FURTHER ORDERED that Good Samaritan's motion to seal (Docket 34) is denied as moot.

Dated February 9, 2012.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE